(35 South. 487.)

No. 14,810.

RAILROAD COMMISSION OF LOUISI-
ANA v. KANSAS CITY SOUTH-
ERN RY. CO.

(Nov. 30, 1903.)

RAILROAD COMMISSION—POWERS — ABANDON-
MENT OF SPUR TRACK—ORDER FORBIDDING
REMOVAL—NOTICE—FINE—EVIDENCE.

1. The case, as made up, includes all the is-
sues needful to decision. The court decides all
the issues presented as it would have decided
originally if the case brought in East Baton
Rouge had not been dismissed.

2. The commission can prevent the removal
or abandonment of a spur already established
which is in use, of which the use of which the
public, or any part thereof, have an interest.

3. Under the power conferred by article 284
of the Constitution on the commission, author-
ity is vested in that body to make reasonable
and just regulations to govern and regulate
railroad tariff. Under this authority, it has
the power to order that a spur or switch be not
removed, subject to review by the court.

4. Defendant had received at least construc-
tive notice of the order of the commission.

5. The commission may assess a penalty for
violation of any of its orders, subject to the
final action of the court, which the law pro-
vides in order to give it proper sanction and
force.

6. The commission has the power to make
its orders executory after reasonable notice
has been given to parties concerned.

7. The court review the action of the com-
mission, and hold that the spur in question
was not in such use as rendered it improper,
under the circumstances, to remove it.

(Syllabus by the Court.)

Action by the Railroad Commission of
Louisiana against the Kansas City South-
ern Railway Company. Judgment for defend-
ant was affirmed by the Court of Appeal, and
plaintiff applies for certiorari or writ of re-
view. Denied, and judgment affirmed.

Walter Guion, Atty. Gen. (H. T. Liverman
and Lewis Guion, of counsel), for applicant.
Alexander & Wilkinson, for respondent.

BREAUX, J. Plaintiff imposed a fine of
$1,000 upon defendant for violating one of
its orders, which fine plaintiff seeks to col-
lect, and defendant declines to pay.

After the fine had been imposed, plaintiff
instituted this suit against defendant in the
district court for the Twelfth Judicial Dis-
trict, parish of De Soto, for its collection.

The order to which we have just referred,
and which plaintiff avers has been violated,
is dated May 25, 1900. A part of this or-
der, pertinent to the issues here, reads: "No
switches or spurs now in use in this state,
shall be removed or abandoned without the
consent of this commission."

The defendant in this suit now before us
for review appeared and alleged, in sub-
stance, that the commission's order (we will
hereafter, for the sake of brevity, use the
word "commission" for plaintiff, and the
words "railway company" for the defendant)
did not come to defendant's knowledge un-
til after the removal of the spur track; that
the commission is without authority or power
to compel it (defendant) to keep up a track
where there is no necessity for such a track;
that the spur track was not necessary, and
caused useless expense; that the order in
question is unreasonable, unconstitutional,
and unjust; that the plaintiff overlooks the
necessity of observing due process of law.

We will here state that the railway com-
pany had brought suit against the commis-
sion in the parish of East Baton Rouge,
the domicile of the commission. This suit
now before us for decision was brought a
short time afterwards in the parish of De
Soto.

In the suit instituted in the parish of East
Baton Rouge, the district court found that
defendant's plea of lis pendens had been well
taken; that the suit was between the same
parties, growing out of the same cause of
action. That court said: "The Attorney
General concedes the right of the Kansas
City Southern Railway Company to urge the
same matters of defense against the suit
brought in De Soto parish for the collection
of the fine." The suit in East Baton Rouge
was dismissed. From the decree dismissing
this suit, an appeal was taken to this court.

The decision of the lower court was con-
firmed, on the theory, in view of the pleadings
and argument in the case, that the rights
of all parties concerned would be protect-
ed—would be heard and passed upon in the
one suit in De Soto parish.

The parties then took up the case for trial
in the parish of De Soto. It was tried, and
the judgment was rendered in favor of the
defendant and against plaintiff, rejecting
plaintiff's demand. The judge of the district
court in the suit in De Soto held that the
commission had no authority to impose a

fine, because the spur was not located at a station. An appeal was taken from the judgment to the Court of Appeal (First Circuit). . That court affirmed the judgment rendered by the district court. Well-considered opinions were filed both on the original hearing and on rehearing in the Court of Appeal.

In the first decision on appeal before the circuit court, it was held substantially as will be shown by the following summary: That the commission has authority to adopt orders to prevent the removal of spur tracks used by the public; that the company did not have actual notice of the order of the 27th of May, 1900, to which we have before referred, but that it had constructive notice. The court also held that, in the absence of constitutional restrictions, legislation may provide that a statute take effect from its passage; that, as there was no constitutional restriction as to the commission, it was legal for that commission, in the absence of a prohibitory statute or constitutional limitation, to make other ordinances operative from the date of their passage.

Having concluded, as above mentioned, that the order was legal and had been properly promulgated, the Court of Appeal then took up the question whether there was necessity to retain the spur where it was, and upon that point held that the question had never been taken up by the commission for decision; that it had declined to hear the defendant; that the commission should have passed upon the question of the right of the removal vel non, and should not have imposed the fine for a violation of its order without first hearing the ground urged by the defendant in answer to the rule why it should not have been fined.

The Court of Appeal says that, without canvassing all the evidence, it has no hesitation in sanctioning the contention of the defendant that there was no necessity for this spur; that it had served the purpose for which it had been constructed. The court also found that the Constitution has not conferred on the commission the power to try and fine corporations for the violation of its orders; that the exercise of such a power would be a quasi judicial function on the part of this commission, which is not sanctioned by the organic law.

There was an application for a rehearing made before the Court of Appeal. In refusing the application for a rehearing, the organ of the court adhered to the views expressed in the original opinion. His associate wrote an opinion in which he stated that he did not concur with the view that the commission has a legal right or authority to assume jurisdiction over spurs and switches constructed by railroad companies, when not located at sections. He concurred in the decree. The plaintiff, the commission, then filed a petition for a writ of certiorari or review.

The commission complains here that after the court held that plaintiff had the power and authority to make, enter, and promulgate the order directing that no switches should be removed without the consent of plaintiff, it went further, and held, erroneously, that defendant had the right to set up all its defenses in the suit instituted in De Soto. The commission further urges that the court erred in not holding that defendant had actual notice of the order of May 25, 1900, prohibiting the removal or abandonment of switches and spur tracks; that the court erred in entering upon an inquiry as to whether the spur in question was necessary for the use and benefit of the public; that the court erred in holding that the commission had no authority to enter the fine imposed, because the Constitution had not conferred upon the commission the power and right to try and fine corporations for violations of its orders and decisions, and further erred in finding that the Constitution of the state of Louisiana had not given to the commission the power to fine; that its powers and decisions had been violated.

We have found, with reference to the facts, that the spur in question is located about 4 miles from the town of Mansfield, and about 2 miles from the station at Trenton; that this spur measured 190 feet in length; that it was intended originally to receive more particularly the lumber of a sawmill to which it was laid; that the sawmill was destroyed by fire since.

The cost of construction of this spur was about $500, and of its maintenance, annually, about $84. We also found that the order not to remove the spur before referred to, dated May 25, 1900, was published in the Baton

Rouge Advocate on the 27th day of May, 1900, and on June 13th following the spur was removed.

It appears that on June 12th Mr. B. C. Marshall made complaint against the defendant, setting forth that there was necessity for the spur which defendant was preparing to remove, and asked that defendant be restrained.

The commission issued a rule against defendant to show cause on the 25th of June, 1900, at Baton Rouge, why it should not be restrained from taking away this spur.

On this rule the commission considered only the question of violation of its order vel non. It refused to consider any other issue. It made the rule absolute, and imposed the fine before mentioned.

In our view, it was proper to consider and decide the issues presented by defendant, which had been presented in the suit instituted in East Baton Rouge, which had been dismissed at the instance of the commission on the ground that they should be urged in the suit in De Soto. Ordinarily suit should be brought by the complaining road at the domicile of the commission, but, if the commission obtains an order to transfer all the litigation to one suit, it has no good ground to complain afterward, and to urge that the transfer should not have been made, and that the issues presented in the dismissed suit cannot be raised in the pending suit.

We think that the following issues grow out of the case as properly made up in the district court, under the ruling of which plaintiff complains:

From that point of view, we consider that the following questions are before us for decision:

(1) Can the commission prevent the removal, or abandonment of a spur already established, under the power conferred by article 284 of the Constitution, giving to the commission authority to make reasonable and just regulations to govern and regulate railroad tariff and service?

(2) Did the defendant have actual notice of the adoption and promulgation of the order of May 25, 1900, or constructive notice?

(3) Was there necessity for this spur at the place where it was prior to moving it away, and, lastly, did the commission have the authority to impose a penalty for violation of its order?

1. Returning to the first question, we have arrived at the conclusion that the commission can prevent the removal or abandonment of a spur already established, under the power conferred by article 284 of the Constitution.

The following are our reasons for thus concluding:

The article just referred to unquestionably confers on the commission the power of regulating the service as between it and the public. 17 Am. & Eng. Ency. of Law (2d Ed.) p. 350.

The word "regulate" has a broad meaning. We think it includes the power to see to the maintenance of the main track and all its switches and spurs as they were at the time of taking charge, and the power to prevent any change when reasonably, in public interest, no change should be made.

Why should the power be restricted to less? The defendant is pleased to invoke that part of the article in question which authorizes the commission "to require all railroads to build and maintain suitable depots, switches and appurtenances wherever the same are reasonably necessary at stations."

This relates to building needed "depots, switches and appurtenances," and limits its authority, as plainly shown by the words quoted. There is no question here of building a switch, the only question being whether a spur should have been removed or not.

When a change is to be made along the line—a switch or spur to be removed—the commission should be consulted, and its consent obtained.

The power to regulate carries with it full power over the thing subject to regulation. Here the Constitution has placed the railroad and its appurtenances under the authority of the commission.

This, we understand, was the view taken by the courts in passing upon words in the interstate commerce act of similar import to those in our Constitution regarding railroads and their management, placed under a commission in accordance with the requirement of the interstate commerce act. The broadest meaning is given to the words "govern" and "regulate." Am. & Eng. Enc. of Law, verbo, "Interstate Commerce." It follows the

thing to be regulated includes main line and side track already laid.

The switches and spur in use are part of the railroad system. If they can be removed without the consent of the commission why should not the railroad company have equal right to change the direction of the main track entirely, without consulting and obtaining the consent of the commission? We cannot see why one should be considered, under the commission, to "regulate," and the other not. The spur forms part of the main line subject to regulation.

The power to regulate authorizes appropriate order to maintain the property in the condition of use in which it should be kept; that is, in a safe and useful condition.

The intention, we take it, in authorizing the commission to "regulate" and "govern"— words of the organic law—was to invest the commission with sufficient authority to prevent the railroad from taking down and doing away with any part of its road.

2. The question of notice vel non received by the defendant presents another question for our consideration. There is conflict of testimony regarding actual notice.

Our Brothers of the Court of Appeal, of this notice, said:

"Did the defendant company have actual notice of the adoption and promulgation of the order, or, if not, is it to be held to have had constructive notice thereof, by reason of its publication in the official journal of the commission fifteen days before the commission of the offense complained of, and made the foundation of its right of action?

"The evidence is conflicting as to the actual notice to the defendant. Mr. Liverman, one of the attorneys for the plaintiff, testified that Mr. Green, the superintendent of the company, admitted to him that he had received notice of the order, but had forgotten it. Mr. Barrow, the secretary of the commission, testified to the same effect.

"On the other hand, Mr. Wilkinson, one of the attorneys for the defendant, testified that his partner, Mr. Alexander, was the general agent of the company, and that they had received no notice of any such order. The superintendent, Mr. Green, testified that he had not received notice of the order.

"It is to be noted that the commission makes no pretense that it had served notice of the order on defendant company prior to the removal of the spur, but appears to rely exclusively on the alleged admissions of the superintendent that he was aware of the order, and that the same was published in its official organ on May 27, 1900.

"In view of the contradictory and irreconcilable evidence on this point, we are not prepared to say that the company had actual notice of the adoption of the order of the commission."

We are not inclined to attach importance to the question of actual notice, for the necessity of actual notice did not arise if the order entered by the commission, to take effect from its date, was legal, and the advertisement, as made, sufficient.

The method of promulgating laws is laid down in the Constitution. It is held as promulgated at the capital of the state the day of its publication, and throughout the state in 20 days thereafter.

Without this requirement of the promulgation, the lawmaking power would have the authority to have laws considered as of full effect from the day they are passed.

The limitation of the Constitution, as relates to the publicity of laws, it occurs to us, does not include the orders of boards invested with powers of administration. These orders are entered to affect a particular industry or class, and do not suggest the idea that they should be promulgated with all the forms and delays necessary when laws are promulgated.

The promulgation has been held legal, in well-considered decisions, in cases where no mode of publication is prescribed. Lapeyre v. United States, 17 Wall. 199, 21 L. Ed. 606; 2 Rose's Notes, p. 133; 8 Rose's Notes, p. 35.

Here an order for commencement of which no time is fixed is operative from the date that it is reasonably made known.

None the less, promulgation of general orders should be public, and ample time should be given. Of course, no one should be taken unaware because of failure to publish a general order. Publicity is one of the most useful principles of our government. The governing power should even go beyond strict requirement in order to insure certainty that all concerned are notified.

3. Its orders had been violated, the com-

mission insists, and its right was absolute to punish for the alleged violation. The commission, at the time it imposed the $1,000 fine, confined the defense on the trial to the one question, had it, or not, removed the spur?

After an investigation, hasty and summary, we must say, it concluded that it had been removed; and it immediately imposed the fine, without taking into consideration any of the defenses offered. The defense was limited, as before stated, to the violation of the order, vel non. Nothing else was considered.

In executing the provisions of a new law, the wisest may entertain different views, and this may account for the determination on the part of the commission to test its provision without stopping to consider the different questions preceding the asserted violation of the order in question.

The question decided by the commission was that the spur had been removed. Of course, this was considered in connection with the order which had been issued.

We have given the reasonableness of the order—a question at issue—our most careful attention.

The business did not justify the maintenance of the Guy spur. There was no necessity for a spur at the place, as it was near a depot and a station. It does not appear that any business has been adversely affected by its removal. The place at which this spur was situated was not favorable to such a spur. Situated where it was, it was an element of danger to the trains on the main line.

The testimony of the superintendent upon the subject does not seem to have been questioned. It shows that this spur, by reason of its incline, is dangerous to operate, and that its isolation on the line is also a serious objection.

Altogether, the testimony shows that the spur was no longer of any use. If the public or the shippers in the immediate neighborhood thought differently, they have not taken the trouble to testify and show the contrary.

While we do not justify the violation of any order which the commission, in discharge of its functions, may deem proper to make, we are of the opinion that, under the circumstances here, there was no ground to inflict a penalty on the defendant, and that the order to that end was absolutely null.

4. Has the commission the right to impose a penalty for noncompliance with its order? is another question of importance.

We think that it has the right, as relates to the failure to execute orders, to determine in what the failure consists, and its extent, and of assessing the amount to be sued for before any court of competent jurisdiction. Article 286 of the Constitution. Thus leaving the right to recover the amount assessed, or any part thereof, to be passed upon by the courts. Although the "commission" is embodied in the "tabernacle" (to quote a word from a decision before us for review) of the Constitution, and although it has been given important functions, to the discharge of which the greatest care and attention should be brought, it has not been intrusted with judicial powers as relates to these fines; and, as they are left to the courts, the commission cannot, in our view, have plenary power in the premises. We refer to the fine which can be imposed under article 286 of the Constitution.

There is no question here of the article of the Constitution (No. 284) regarding contempt, and the punishment which may be inflicted "as is provided by the law for the district court."

In our view, the proceedings are regular enough, save to the extent that it decided that defendant removed the spur without cause, and save to the extent that the fine of $1,000 was imposed for the asserted violation of the order of the 25th of May, 1900.

In other respects the proceedings of the commission are not irregular.

For the reasons assigned, the rule nisi issued at the instance of plaintiff is recalled and discharged, applicant's demand is rejected, and the decrees heretofore entered in the district court and the Court of Appeal are affirmed.

PROVOSTY, J., concurs in the decree.