CUMBERLAND TELEPHONE & TELEGRAPH CO. v. RAILROAD COMMISSION OF LOUISIANA.

(Circuit Court, E. D. Louisiana, Baton Rouge Division.   August 24, 1907.)

### No. 61.

1. TELEGRAPHS AND TELEPHONES—STATE REGULATION—POWERS OF RAILROAD COMMISSION OF LOUISIANA.

Const. La. art. 283 et seq., creates the Railroad Commission of Louisiana, and confers upon it authority to adopt, change, or make "reasonable and just rates, charges and regulations" to govern railroad telegraph and telephone service, etc., "to adopt such reasonable rules, regulations and modes of procedure as it may deem proper for the discharge of its duties * * * and to regulate the mode and manner of all investigations and hearings of railroad companies and other parties before it in the establishment of rates, orders and charges." It is given power to summon and compel the attendance of witnesses and the production of books and papers, and its decisions are made reviewable by the courts. *Held*, that such provisions did not confer arbitrary power on the commission to make rates, but by necessary implication required it to fix rates or charges only after a full investigation into the facts without which it could not determine what rates, charges and regulations were just and reasonable.

2. SAME—MANNER OF EXERCISING POWERS.

The fixing by a state commission of rates of charge to govern a telephone company based solely on the value of the company's property in the state as returned for taxation and its net earnings as shown by its annual reports, is a merely arbitrary act, and not a valid exercise of the power to establish "reasonable and just rates."

3. SAME—REVIEW OF ORDERS BY COURT—SCOPE.

Under the provisions of articles 283-286 of the Constitution of Louisiana which create the Railroad Commission of Louisiana, with power to make "reasonable and just rates, charges and regulations," governing public service corporations, and provide that its orders may be reviewed by the courts in an action brought against it by any party affected thereby, and which may be dissatisfied, as such provisions are construed by the Supreme Court of the state, such an action is of a plenary character, and the court may not only determine the legality and regularity of the action of the Commission in making the order, but may also upon evidence introduced before it determine the reasonableness and justness of the rate, charge or regulation made by the order.

4. SAME—ORDER MADE BY COMMISSION—PRESUMPTION OF REASONABLENESS.

There is no presumption that rates of charge for a telephone company fixed by a state commission are reasonable and just, where it is shown that they were adopted arbitrarily without any investigation of the facts necessary to enable the Commission to form an intelligent judgment as to their reasonableness.

5. SAME—BASIS OF ORDER FIXING RATES—VALUE OF PROPERTY.

The value of the property of a telephone company within a state while a factor to be considered is not the sole, nor probably the most important, factor in determining what would be reasonable and just rates for it to charge for service between points in the state.

6. SAME—ORDER REVIEWED.

An order made by the Railroad Commission of Louisiana reducing the rates to be charged by a telephone company for service between points within the state *held* illegal and null, because adopted arbitrarily on conjecture, and not based on investigation or the exercise of judgment and discretion as required by the state Constitution; and also because the rates so established were not reasonable and just, it being shown that

the rates previously in force were reasonable and just to the public, and that under them the company could not earn as much as 7 per cent. net profit on its Louisiana investment.

In Equity. Suit for injunction.

W. L. Granbery, Denegre & Blair, and Victor Leovy, for complainant.

Walter Guion, Atty. Gen. of Louisiana, and E. H. McCaleb, Jr., for defendant.

SAUNDERS, District Judge. 1. The complainant is a corporation organized under the laws of the state of Kentucky, and is domiciled in and a resident of that state, and owns and operates an extensive system of telephone lines and exchanges in Louisiana and other states. The defendant, the Railroad Commission of Louisiana, is a public corporation organized under the laws of the state of Louisiana, and is empowered by the Constitution and laws of Louisiana "to adopt change or make reasonable and just rates, charges and regulations" for telephone companies operating in that state on their business between points therein. In the exercise of the power so conferred upon it, the Commission on December 13, 1905, adopted an order (No. 488) fixing a tariff of rates and charges on complainant's intra Louisiana toll line messages. This tariff was adopted by the Commission precisely as framed and proposed by complainant itself. On August 6, 1906, the Commission adopted another order (No. 552), whereby considerable reductions were made in the tariff contained in order 488. There is a preamble to order 552, which gives the reasons for the reduction in the rates as follows:

"Upon numerous complaints being made to the Commission against the charges made by the Cumberland Telephone & Telegraph Company in regard to the rates for long distance conversations between points in the state of Louisiana, the Commission instituted this proceeding, and accordingly a hearing was had at Baton Rouge, Louisiana, on August 6, 1906.

"The Commission has fully investigated the charges made by said company; believes they are unnecessarily high and excessive, and at the hearing the company failed to show any good reason why the reductions proposed by the Commission shall not be made.

"The Commission finds it necessary however to rearrange the rates proposed by it in the order and in accordance with its conclusions; and it is hereby ordered," etc. [Then follows a detailed tariff of the rates as reduced.]

On August 16, 1906, complainant filed with the Commission a petition asking for a rehearing on its decision repealing the tariff contained in Order 488 and substituting the lower tariff contained in Order 552. This petition gives the following as the grounds upon which it claimed a rehearing, viz.:

"The Cumberland Telephone & Telegraph Company hereby respectfully prays for a rehearing of the above case, and that the judgment therein rendered and filed on the 6th day of August, 1906, be set aside on the following grounds to wit:

"First. The judgment of the Commission states that numerous complaints have been made to the Commission against the charges made by this company for long distance conversations between points in the state of Louisiana, but at no time, either prior to or at the trial of this case, was any specific information given to this company of the character of the complaints, or of the

particular rates complained of, and the company was unable to meet any general or indefinite complaint, and was not placed in the position to meet specific complaints with specific evidence that this company was not furnished with the name of a single complainant.

"Second. That the Commission has not made any investigation which would allow it to reach a conclusion that the rates charged by the company were unnecessarily high or excessive; that this company was entitled under law to be confronted with some charges supported by evidence sufficient to establish a prima facie case before it could be called upon to answer; and that no evidence of any kind whatsoever was offered at the trial or produced to show that the long distance rates of this company were unreasonable or excessive, nor were any of the complaints made to the Commission brought to the knowledge or submitted for the inspection of or made known to this company.

"Third. That the long distance rates in force prior to this recent order, having been approved and put in force by the Commission, were in law presumed to be reasonable and proper until this presumption was met and overcome by proof, and this company could not legally and properly be called upon to offer any evidence until this presumption had been met and a prima facie case made out.

"Fourth. That the Commission proceeded upon the theory, as shown by its order, that the burden was upon the company to show good reason why the reduction proposed by the Commission should not be made; whereas, under the law, the rates then in force and established by the Commission were presumed to be reasonable and fair, and could not be reduced unless good reason were shown why the reductions proposed by the Commission should be made.

"Fifth. Because it was shown at the trial on behalf of this company that the long distance rates prevailing in Louisiana were as low as existed in other parts of the country, and that Louisiana was enjoying the lowest schedule of long distance rates promulgated by any telephone company in the United States, and this, notwithstanding the fact that in many portions of the United States much more thickly populated than Louisiana the revenues of long distance lines greatly exceeded those in Louisiana by reason of greater population, and the expense of lines and equipment in Louisiana, by reason of its damp climate and soil, were and are greater than in other localities, and notwithstanding that it was additionally shown and known to the Commission that the proportion of swamps and navigable waters requiring to be crossed by cables was excessive in Louisiana.

"Sixth. Because the business of this company in this state has not heretofore, and does not now, justify the payment to the stockholders of the company of more than 7 per cent. dividend which is less than what would be a reasonable return on capital invested, considering the nature and character of the business, and no showing whatsoever was made, and, in fact, there was no intimation of any kind, that the company was deriving excessive profits from its business.

"Seventh. That no evidence was offered, and no tender of any evidence made to show that the company's receipts and expenditures from toll lines in the state or any examination whatsoever made into the revenues and expenses of toll lines.

"Eighth. Because the toll rates in force and approved by the Commission are in themselves reasonable and fair, and should not be disturbed.

"Ninth. Because it is not possible for the Commission to reach a satisfactory conclusion and be able to determine that the company's long distance toll rates are high or excessive unless it will make a thorough investigation into the revenues derived by the company from its business, the expenditures of the company, the depreciation, cost of maintenance, amount of investment, and other elements entering into the problem, which can only be arrived at by careful, painstaking, and expert investigation and examination, and no such investigation or examination has been made and no effort made to make such investigation.

"Tenth. Because the rates proposed to be established by the Commission in its order of August 6, 1906, if put in force, would be ruinous and cause irreparable injury to this company, because as this company operates, not only

in the state of Louisiana, but also in the states of Tennessee, Kentucky, Mississippi, Illinois, and Indiana, the toll rates in all of said states, which are upon the same schedule as prevailing in this state, heretofore approved by this Commission, would necessarily have to be changed to conform to the reduced rates or lower rates established for Louisiana, for it would be manifestly impossible for this company to charge more in those states than charged in Louisiana for a similar service in the face of the fact that in those states the lines of the company largely run through more populous districts and cost less to build and maintain, and because, if this company accepts and acquiesces in the new or reduced rates established by this Commission as being reasonable, it would not be able and could not claim that the higher rates charged in other states for similar service, rendered under more favorable circumstances, were not unreasonable.

"Eleventh. Because, even upon the theory adopted by the Commission, its order of August 6, 1906, is unreasonable, inconsistent, and unfair, because in the paragraph providing for toll rates between any two points exceeding 20 miles it establishes rates which are not only inconsistent, but which would compel this company, if it acquiesced therein, to discriminate against its patrons by charging less to patrons for long distance conversation between points exceeding 20 and less than 40 miles than it charged its patrons for conversations between points less than 20 miles, the difference being in the pole-line and air-line measurements.

"Twelfth. Because a comparison of rates established by the Commission's order of August 6th with rates established by the Commission for similar service by telegraph companies clearly shows that the proposed rates are unreasonably low.

"Wherefore, petitioner respectfully prays for a rehearing and that this, its application, be set down for hearing at a date to suit the convenience of the Commission after its vacation."

The rehearing asked for was granted, but apparently nothing was done on the rehearing except to hear argument. On the same day on which this argument was heard, the Commission rendered the following order:

"The Commission having granted a rehearing in the above case, and having heard the Cumberland Telephone & Telegraph Company at Baton Rouge, La., on October 10, 1906, finds no cause to change its opinion as to what constitute fair and reasonable rates for telephone toll service, as furnished by the said company, between places in the state of Louisiana, and as set forth in its order No. 552 adopted on August 6, 1906.

"It is now ordered that the rates as adopted and established by the said order No. 552 adopted August 6, 1906, be and the same are hereby reaffirmed, and made effective within 10 days from the date of this order.

"By order of the Commission.

"Baton Rouge, Louisiana, Oct. 10, 1906."

Thereupon the complainant on October 19, 1906, filed its bill in this case, praying that the Commission be enjoined from putting in force the reduced tariff contained in Order No. 552, that said order be declared null and void, and that the Commission be enjoined from instituting any proceedings to compel complainant to pay fines or penalties for disregarding and violating said order. This relief is asked upon two grounds: (1) That the tariff in Order 488 is entirely fair, just, and reasonable, so far as concerns the public, but does not afford complainant a fair, just, and reasonable compensation for its services, whereas the tariff proposed in Order 552 would compel complainant to render its services at unreasonable, unjust, and unremunerative rates, which would not afford complainant a reasonable return for the service rendered; that said reduced tariff is unreasonable and unjust in itself,.

and is not justified by any conditions either concerning the service in question, or by the financial or physical condition of complainant's property or affairs, and would result in the taking of complainant's property without due process of law and without compensation previously made, in violation of specified provisions of the federal and state Constitutions. (2) That said Order No. 552 was adopted without evidence or investigation justifying it, and "without making an investigation or examination into any facts necessary to reach a determination and without any effort in that direction."

Before taking up the evidence in the case, let us see what under the Constitution of Louisiana are the powers of the Commission, in what manner those powers can be validly exercised, and the relation of the courts to the Commission, under the provision of the Constitution itself.

2. Article 283 of the Constitution of Louisiana creates a Commission, designated as the "Railroad Commission of Louisiana," and article 284 declares that:

"The power and authority is hereby vested in the Commission, and it is hereby made its duty, to adopt, change or make reasonable and just rates, charges and regulations, to govern and regulate railroad, steamboat and other water craft, and sleeping car, freight and passenger tariffs and service, express rates, and telephone and telegraph charges, to correct abuses, and prevent unjust discrimination and extortion in the rates for the same" on line or business done within Louisiana. The Commission shall have power to adopt and enforce such reasonable rules, regulations and modes of procedure, as it may deem proper for the discharge of its duties, and to hear and to determine complaints that may be made against the classification and rates it may establish and to regulate the mode and manner of all investigations and hearings of railroad companies, and other parties before it, in the establishment of rates, orders and charges and other acts required or authorized by these provisions. They shall have power to summon and compel the attendance of witnesses, to swear witnesses and to compel the production of books and papers, to take testimony under Commission and to punish for contempt, as fully as is provided by law for the district courts.

"Art. 285. If any railroad, express, telephone, telegraph, steamboat and other water craft or sleeping car company, or other party in interest, be dissatisfied with the decision, or fixing of any rate, classification, rules, charge, order, act or regulation, adopted by the Commission, such party may file a petition, setting forth the cause of objection to such decision, act, rule, rate, charge, classification, or order, or to either or to all of them, in a court of competent jurisdiction at the domicile of the Commission, against said commission, as defendant, and either party to said action may appeal the case to the Supreme Court of the state, without regard to the amount involved, and all such cases, both in the trial and appellate courts shall be tried summarily and by preference over all other cases. Such cases may be tried in the court of the first instance either in chambers, or at term time; provided, all such appeals shall be returned to the Supreme Court within 10 days after the decision of the lower court.

"Art. 286. * * * Provided, that whenever any rate, order, charge, rule or regulation of the Commission is contested in court, as provided for in Art. 285 of this Constitution, no fine or penalty for disobedience thereto, or disregard thereof, shall be incurred until after said contestation shall have been finally decided by the courts, and then only for acts subsequently committed."

Powers of Commission and How Exercised. The Constitution begins by authorizing the Commission to establish "reasonable and just rates, charges and regulations" with respect to the public service cor-

porations subjected to its jurisdiction. As the Commission cannot know by intuition what rates, charges, and regulations would be "reasonable and just," before it has made a careful examination into all the facts which bear upon those rates, charges, and regulations, it would be a fair inference, even if there were nothing else in the Constitution on the subject, that the Constitution by necessary implication requires the Commission to make full investigation into the facts before it establishes its rates, charges, and regulations. "Cum aliquid imperatur, imperatur et id perquod devenitur ad illud." The reasonableness and justice of a charge for transportation by a railroad, for example, depends upon a great many facts, most of which are peculiar to each road. What did the railroad actually cost to construct? How much does it cost to operate? Was the road constructed carefully, economically, and properly? Or was it constructed extravagantly and wastefully, with unnecessary expenditure of money? Is the cost of operation only what a prudent and intelligent administration would incur? Or are unnecessary expenses incurred? Is the pay roll loaded down with high salaries to a few favored virtually sinecure officials? Or are the salaries only such as are customarily paid in the administration of similar properties of similar magnitude? What is the volume of business done? What are the facts in the locality in which the corporation operates affecting the question whether a decrease in rates will lead to an increase in business? And what, relatively to the increased business, would probably be the increased cost of operation? What amount of business has the company actually done in the past? And what has it actually cost, all things considered, to do this amount of business? What does it cost to maintain the plant of the company in good working order? And what is the best and most economical way to provide for meeting this cost? All these and many other questions of fact must be most carefully investigated and considered before any Commission can act intelligently and with any likelihood of success in the matter of establishing "reasonable and just rates, charges and regulations" for public service corporations. Even when all the facts, which should enter into the discussion and control the decision, have been ascertained with the utmost possible care and exactness, the conclusion is still doubtful in many cases. Where the facts are not known or inquired into, the regulations made by any Commission would be mere arbitrary edicts, or, at best, only conjectures made in good faith, and tested at the expense of the regulated corporations. The whole spirit of our institutions revolts at the idea that any Commission or department of the government should be vested with such arbitrary and irresponsible power over the fortunes or business of any persons whatever, even though they belong to the much harassed and perplexed legal persons known as public service corporations. In view of the fact that the Constitution in express terms authorizes the Commission only to establish "reasonable and just rates, charges and regulations," and of the further fact that the reasonableness and justice of such rates, charges, and regulations cannot be even conjectured intelligently without exact knowledge of the facts, I should have no hesitation in concluding, though there were nothing else in the Constitution but the bare mandate to establish reasonable and just

rates, etc., that the Constitution by implication requires the Commission to make full and adequate investigation into the facts before it exercises its powers. It has no arbitrary authority. It is not a bureau of conjecture and experiment. The provisions of article 284 of the Constitution seem to me to put this conclusion beyond dispute. That article declares that:

"The Commission shall have power * * * to hear and determine complaints that may be made against the classification and rates it may establish and to regulate the mode and manner of all investigations and hearings of railroad companies and other parties before it, in the establishment of rates, orders, charges, and other acts required or authorized by these provisions. They shall have power to summon and compel the attendance of witnesses, to swear witnesses, and to compel the production of books and papers, to take testimony under Commission, and to punish for contempt, as fully as is provided by law for the District Courts."

Not only is the Commission furnished with the amplest power to investigate all facts concerning the proper discharge of its duties, but express mention is made of the Commission's regulation and use of these powers in the *establishment* of rates, charges, orders, etc. This clearly indicates that the Constitution expected, and therefore requires, that the conferred powers of investigation shall be used in the investigation and ascertainment of those facts which it would be indispensable for the Commission to be informed about in establishing reasonable and just rates. The idea of the Constitution is obviously that the Commission shall, in every exercise of the powers intrusted to it, use every means to learn what reason dictates, and to do what justice requires.

In discussing the powers of a similar Commission in California, the Supreme Court of that state say:

"If they [the Commission] attempt to act arbitrarily, without investigation, or without the exercise of judgment or discretion, * * * they violate their duty, and go beyond the powers conferred upon them." San Diego Water Co. v. San Diego, 118 Cal. 556, 50 Pac. 633, 38 L. R. A. 460, 62 Am. St. Rep. 261, cited with approval by the Supreme Court of the United States in San Diego Land & Town Co. v. National City, 174 U. S. 752, 19 Sup. Ct. 804, 43 L. Ed. 1154.

I think this dictum of the California Supreme Court correctly states the law as to the powers, and the legal mode for the exercise of the powers, of the Commission to regulate the public service corporations of the different states. These Commissions have no arbitrary powers. They have no authority to fix any rate they please simply because it so pleases them. Their only authority is to fix reasonable and just rates. This requires investigation into the facts, in order to enable the Commission to determine, by the exercise of judgment and discretion upon the ascertained facts, what is reasonable and just. It would be as absurd to talk of the exercise of judgment or discretion without a previous investigation into and determination of the facts, as to talk of feats of swimming performed on dry land, or the use of the microscope in Egyptian darkness.

Relation of the Courts to the Louisiana Railroad Commission. In most states the laws do not make provisions for a review by the courts of the action of the Commissions, when the regulated corporations

are dissatisfied with such action. But the Constitution of Louisiana expressly subordinates to the decision of the courts the final validity of the action of the Commission. When any party affected by any order of the Commission is dissatisfied therewith, the Constitution declares that the party dissatisfied shall have the right to file a petition in a court of competent jurisdiction, making the Commission defendant thereto. The dispute between the Commission and the party dissatisfied is then tried in court. That dispute is whether the rate, order, or regulation of the Commission is reasonable and just or not. The courts decide this question, and are bound to decide it on their own convictions as to what is reasonable and just under the proved facts of the case. The entire controversy goes into the courts in Louisiana for decision, and the courts are not limited to the determination of the single question whether the order complained of would violate the fourteenth amendment of the federal Constitution, by confiscating, in effect, the complainant's property, or appropriating it to the use of the public without allowing the owner due compensation or return for such use. If that question is in a particular controversy, it goes, of course, to the court, but the entire controversy which was between the complainant and the Commission is transferred in Louisiana to the court for its decision. When the controversy comes before the court for decision, what will be the result if it should appear that the Commission's action was so irregular as to be null? If, for example, it should be shown that the order complained of was in substance a mere arbitrary edict, made without investigation, and therefore made without the exercise of judgment and discretion upon the actual and known facts of the case? I think a court would have no difficulty in holding such action of the Commission to be illegal and null, not because it is demonstrated to be unjust or unreasonable, but because the Commission had no power to act in that manner. But could the court go further, and on the evidence adduced at the trial in court, which the Commission had not considered or passed upon, hold that the order complained of was unreasonable and unjust? My own view would have been that in such a case the court should have limited its action to declaring the order complained of to be illegal. But the Supreme Court of Louisiana seems to have decided the other way in the case of the Railroad Commission v. Kansas City Southern Ry. Co., 111 La. 133, 35 South 487, as to the power of the state courts. In that case the Commission passed a general order forbidding the removal of any switches or spurs without first obtaining the consent of the Commission. In ignorance of the order, the defendant, a few days after it had been adopted, removed the spur of an abandoned mill. The Commission imposed a fine of $1,000 for this violation of its order. The defendant resisted on the ground that the spur was useless and abandoned, and that there was no reason to maintain it. The Commission refused to hear evidence on this defense, and sued solely on the ground that its order had been disobeyed. In the suit to enforce and collect the fine imposed by the Commission, the defendant appeared and was permitted to introduce evidence to establish its defense. The reasonableness of the order depended on the facts pleaded in defense. The Supreme Court held

the order in passing the fine to be unreasonable, and therefore null; thus giving effect to evidence determinative of the reasonableness of the order, which had been first received in court and had never been passed on by the Commission; for the Commission had proceeded on the theory that mere disobedience to their order entitled them to fine the company that disobeyed, regardless of evidence to show that obedience in the particular case was not reasonably required. The Supreme Court rejected this theory, declared that evidence was admissible to show an excuse, and proceeded to pass on the evidence offered to establish an excuse.

3. The Commission has offered in this case only certain statements and exhibits furnished by the telephone company, and tending to show its financial condition and property, and the evidence of its secretary. Mr. Barrow, and an affidavit of the president, Mr. De Fuentes, as to the manner in which and the facts on which the Order No. 552 reducing the rates, was adopted. Mr. Barrow's testimony is not as specific and clear on this point as it might have been, but it is due to him to say that he answered all questions put to him with entire frankness. I gather from his testimony that the reason for adopting Order 552 was this: The complainant is required by law to file an annual statement with the Commission, showing, among other things, the value of its property in Louisiana and the net amount realized from its Louisiana business. On the basis of the value shown by these statements, the complainant was making from 10 per cent. to 15 per cent. a year. The Commission was of opinion, therefore, that on its own showing the profits made by the complainant were unreasonably large, and accordingly made the reduction contained in Order 552. Mr. Barrow admits that these annual statements of the complainant showed only the valuation placed on the company's property in Louisiana for the purposes of taxation, and that such valuation of the property was not, in his opinion, its real value. Yet the reductions ordered were based solely, so far as appears, on the relation between the valuation so shown and the profits made by the company. The problem of fixing reasonable and just rates is a much more difficult and intricate problem than this simple rule of three method followed by the Commission. The factors to be considered are far more numerous and the operation much more complicated. In the oral argument it was conceded that it would be fair for complainant to earn 7 per cent. net dividend on its actual investment in Louisiana from its Louisiana business. The evidence is clear that the complainant is not now earning that much in its Louisiana business alone, nor on its Louisiana business with a proportion of interstate business added. It is urged by the Commission that included in the Louisiana investment of complainant is a sum earned from Louisiana business set aside in the reserve fund and then used in extending the system in Louisiana, and now treated as a part of the Louisiana investment of the stockholders. This may be so to some extent—it is certainly possible. But it is impossible for me to determine from the figures in the record to what extent, if at all, it is a fact. Counsel for defendant have not themselves undertaken to indicate what, even in round figures, they consider is the sum thus earned in the business and reinvested in the business, without having been

distributed to the shareholders in dividends. It will be time to consider the legal results from such a state of facts when it shall have been shown to exist in a definite sum, and not in a purely conjectural amount. The evidence is conclusive that, so far as the public is concerned, the existing rates established by Order No. 488 are reasonable and just. No attempt has been made by evidence, no suggestion has been made in the oral argument, that these charges are unreasonably high to the public.

Counsel for the Commission urge with great earnestness (1) that the law presumes the rates established by the Commission to be reasonable and just; (2) that the value of complainant's property and plant in Louisiana is in reality the amount shown in the complainant's annual statement to the Commission; (3) that the reduced rates established by Order 552 are, as a matter of fact, reasonable and just.

(1) As to Presumption that Rates Ordered by Commission are Just and Reasonable. The establishment of reasonable and just rates of compensation for the services rendered by public service corporations is a task of the greatest difficulty, and one that requires the most careful and thorough investigation into a multitude of facts. If the Commission will take the trouble to read the cases of Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819, and Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014, decided by the Supreme Court of the United States, or the decisions in any volume of the Reports of the Interstate Commerce Commission, they will see how many are the factors to be considered, and what a mass of testimony and figures have to be sifted before reaching any conclusion as to what rates are reasonable and just. In the present case no investigation whatever was made by the Commission before they acted. They simply combined two statements contained in the annual report of complainant—the statement as to value of plant and the statement as to net earnings—and from these two amounts figured out what would be a reasonable and just return for the complainant to get from its Louisiana business. This procedure ignores nearly all the elements of the problem, and bases this Commission's solution on an erroneous process. There is no reason in law nor in fact why a court should presume that the Commission has by this method of dealing with the problem hit upon rates that are, in fact, reasonable and just.

(2) Value of Complainant's Property in Louisiana. Counsel for the Commission argue that the complainant's property in Louisiana was not all paid for with complainant's capital, but was partly paid for out of a surplus, or reserve, or depreciation fund, which was accumulated by complainant from the receipts of its Louisiana business, and was then reinvested, not in repairs or maintenance, but in extensions and additions to the property. This may be a fact, but it is not shown to be a fact. The Commission has power, if it wishes to do so, to direct the books of complainant to be so kept as to show such use of receipts. In the present state of the books, this seems to be impossible. And the floating debt of the complainant would seem to be much greater than any sum which could possibly have been used from the reserve, or surplus, or depreciation fund for extensions and additions, after paying for maintenance and repairs. Apart from this dis-

cussion as to the value of complainant company's property in Louisiana, that value is not the sole, nor probably the most important, factor in determining the reasonableness and justness of the rates which the complainant is entitled to charge for the business it does in Louisiana. It may well happen that, although the complainant's plant was constructed properly and economically and without any waste, yet the present value of that property would be little or nothing. For wrecking purposes the plant is probably worth nothing more than the value of the exchange buildings in the different cities, which would be only a small part of the sum expended by the complainant. Other conditions may have destroyed the attractiveness of the property as an investment. For example, the apprehension of competition from new inventions, such as the telautophone or others, may have made capitalists unwilling to invest money in telephone plants. Other conditions may have had the same effect. It is conceivable, therefore, that the plant might have no value whatever at the present date, none the less the business is conducted for the present; and it surely could not be claimed that because the present value of the plant is nothing therefore the persons using that plant would be entitled to use it without paying any sum whatever for the use of it. While the present value of the plant is one element to be considered in determining the reasonableness of the rates, it is very far from being the most important element. And yet it is the only element which the Commission has considered in this case at all.

(3) As to the Reasonableness of the Rates. The only reason that the Commission has for supposing that it has correctly guessed what would be a reasonable and just rate of compensation to allow the telephone company is its assumption that that rate could be properly arrived at by considering only the value at which the complainant's property is taxed in Louisiana and the net returns which the company makes over and above its expenses and allowances for depreciation and repair. As I have just stated, this is something wholly erroneous. Under the facts disclosed in this record, I am clearly of opinion that complainant is entitled to a fair return on its money actually invested; that 7 per cent., in a business of the sort carried on by complainant, is a fair and proper return; and that complainant is not now deriving from the rates authorized by Order 488 as much as 7 per cent. on its investment in Louisiana.

The public could not, to-day, get as complete a telephone system as the existing one by expending a much larger sum than that on which the complainant asks to base its rates. Moreover, it has been shown that the rates charged in Louisiana are the same in most cases, and less in many cases, than the corresponding rates charged under similar circumstances and for similar service by telephone companies elsewhere. The public, therefore, has no shadow of a reason to complain either that it is paying a rate that is unreasonable and unjust as to the public, or that the complainant is making an unreasonably large profit on its investment. I therefore find that the order of the Commission No. 552, reducing the rates authorized by Order No. 488, is illegal and null, by reason of its being on arbitrary conjecture, not based on investigation or the exercise of judgment and discretion ap-

plied to ascertained facts; and, further, that the evidence in this case establishes that the complainant does not now earn under the tariff in Order 488 as much as 7 per cent. on its Louisiana business, and as I consider that a net profit of 7 per cent. on the Louisiana investment would be only a fair return in a business of this character (and counsel for defendant seem disposed to admit that this would be a fair and reasonable profit), any reduction of the existing rates would be unreasonable and unjust.

There will be judgment for complainant as prayed for in the bill.