No. 9448.

No. 9457.

THE PEOPLE, EX REL. *v.* COLORADO TITLE AND TRUST COMPANY, ET AL.

THE PUBLIC UTILITIES COMMISSION *v.* COLORADO TITLE AND TRUST COMPANY, ET AL.

1. GENERAL ASSEMBLY—*Delegation of Power.* The state has inherent power to regulate and control public utilities operating within its limits, and the General Assembly may delegate this authority to a commission, and authorize such commission to permit the discontinuance of service upon a public railroad, and the dismantling thereof.

2. PUBLIC UTILITIES COMMISSION—*Powers.* The statute (Laws 1913 c. 127) confers upon the commission exclusive jurisdiction to determine whether a railroad company may suspend service upon, and dismantle, a railway lying wholly within the state. Under the act of 1915 (Laws 1915 c. 134) the commission has the same control over a receiver of a railroad as over the railway company itself, before the appointment of the receiver.

3. CONSTITUTIONAL LAW—*Judicial Power.* The ascertainment of the facts necessary to the just exercise of the powers conferred by the statute, and the exercise of judgment thereupon, is not the exercise of judicial power, and is in no sense an invasion of the Constitution.

Teller and Bailey, J. J.'s concur, solely upon the ground that the District Court denied the application of the Attorney General to intervene in behalf of the people.

*Error to El Paso District Court, Hon. J. W. Sheafor, Judge.*

Mr. LESLIE HUBBARD, Attorney General, Mr. CHARLES ROACH, Deputy Attorney General, Mr. HORACE N. HAWKINS, Mr. I. B. MELVILLE, Mr. C. M. HAWKINS, Mr. M. I. O'MAILIA, for The People.

Mr. A. P. ANDERSON, Mr. L. J. WILLIAMS, for The Public Utilities Commission.

Mr. W. V. HODGES, for The Colorado Title & Trust Company, as Trustee.

Mr. C. C. HAMLIN, for The Colorado Midland Railroad Company.

Mr. GERALD HUGHES, Mr. C. C. DORSEY, Mr. W. M. BOND, Jr., for A. E. CARLTON, Receiver.

These cases present the question whether the Public Utilities Commission of this state has exclusive and original jurisdiction regarding the cessation of operation upon, and the abandonment and dismantling of, the Colorado Midland Railroad, and whether the receiver of the road should apply to this commission for leave to cease operation, and the abandonment and sale of the line, and whether that portion of the District Court order directing and commanding the cessation of operation upon, and the dismantling of, the road by the receiver without the consent of the commission is null and void, as having been made without jurisdiction. In other words, does the Public Utilities Act of 1913, as amended in 1915 and 1917, confer upon the Commission, regardless of the court's order appointing a receiver, exclusive jurisdiction to pass upon the question of operating, abandoning, or the dismantling and "junking" of a line of railroad, lying wholly within the state.

The Colorado Midland, completed about 1889, was operated under the name of the Colorado Midland Railway Company until June 1, 1917, when it was taken over and operated by the Colorado Midland Railroad Company. Two million dollars in bonds, secured by a deed of trust, were issued by the latter company to the promoters of the new organization, for money they invested in the road, and the Colorado Title and Trust Company was named trustee. In December, 1917, the property was taken over by the U. S. Railroad Administration, but was released June 21, 1918.

July 1, 1918, the Trust Company began a foreclosure suit in the District Court of El Paso County. The bill alleged that the Midland could not longer be operated as a railroad, that no purchaser could be found who would buy the property as an entirety and undertake to operate it as

a railroad, and prayed that its operation be discontinued, that it be dismantled and sold, and asked for the appointment of a receiver, which was accordingly done without opposition, the railroad company appearing and consenting thereto.  The next day, July 2nd, the receiver filed in court his application asking for a court order allowing the abandonment of service upon, and directing the sale of, the road, and all its equipment in lots and parcels and at public or private sale.  The court thereupon entered an order permitting and directing the receiver to sell, either in separate parcels, or otherwise, as he might determine. the road, and its entire properties and equipment, and to remove and sell the rails and tracks, and to permanently abandon and discontinue service thereon, and not further operate it as a railroad, the order to become effective August 5, 1918.  It is a "junking" order to permanently cease operations upon, tear up the track, dismantle the road and to sell its component parts.  Under the order it no longer was to be used as a railroad, or devoted to public service.  This order was entered July 2nd without notice to the Public Utilities Commission, but was not to go into effect until August 5th, to comply with general order No. 15 of the Public Utilities Commission which provides as follows:

"In the matter of abandonment and discontinuance of tracks and service of steam and electric carriers.  It is hereby ordered, by the Public Utilities Commission of the State of Colorado that no electric street railroad, interurban railroad or steam railroad shall discontinue its service, or abandon its line of railroad, or any part thereof, or remove its tracks, or any part thereof, without first having filed with this Commission a written notice of its intention to discontinue, abandon or remove its service or tracks, or any part thereof, within the State of Colorado; said notice to be filed with the commission thirty days prior to the discontinuing of its service, or the abandonment or removal of its tracks, or any part thereof."

July 3rd a copy of the court order was filed with the commission along with written notice of the intention of the receiver to discontinue service Aug. 5th, and thereafter remove the tracks. Thereupon the Board of County Commissioners of Park County, and a large number of other complainants, filed complaints with the commission against its permitting the "junking" of the road; individual protests were also filed in addition to the formal complaints. The railroad and the receiver were served with notice of these complaints, and filed pleas to the jurisdiction in the nature of demurrers, challenging the jurisdiction of the commission. They claimed the commission had no jurisdiction and that the court had exclusive jurisdiction, and also took the position that the commission was without jurisdiction to proceed in the premises because the District Court had already signed and entered a decree discontinuing operations upon, and dismantling the road, and claimed it had the constitutional right to enter such an order which deprived the commission of jurisdiction, and that the commission would be in contempt of court, if it interfered with the receiver in carrying out the order of July 2nd. Complainants claimed the commission had exclusive jurisdiction in such matters, and that the court was without jurisdiction to enter such an order. Argument before the commission upon the question of jurisdiction was begun July 25th, and concluded at 4:30 July 26th, and then taken under advisement until July 30th, at which time the commission would again convene, and the commission announced that in the meantime it would appear before the court that entered the order, and endeavor to secure a modification thereof, and further stated that, if the commission determined July 30th that it had jurisdiction, evidence would then be taken.

July 29th, the commission appeared, as announced in the District Court and objected to that portion of the order directing the receiver to cease operations upon and dismantle the road, and moved the court to either modify or

vacate the order. The motion was based upon the ground that the court was without jurisdiction to enter such an order, such power being vested exclusively, as it was alleged, in the commission. To this motion the receiver and the railroad filed pleas to the jurisdiction in the nature of demurrers. The Attorney General then appeared at the same time (July 29th), and asked leave to file a petition in intervention which raised the same question, namely, that of discontinuing operations upon and dismantling the road, he claiming on behalf of the state that in these matters the jurisdiction of the commission was exclusive. The motion of the commission, and the motion of the Attorney General, came on, July 29th, for hearing before the court that entered the order, and after argument were continued to August 3rd. Meanwhile, July 30th, the commission met pursuant to adjournment, and made its final ruling on the question of jurisdiction, overruling the demurrers, and holding it had exclusive jurisdiction, and would proceed immediately with the taking of testimony, and would allow one day on a side only. Complainants objected to so short a time, and moved for a continuance on account of the large number of their witnesses, and the alleged physical impossibility of procuring witnesses from so far away along the line of road, and, the motion being overruled, introduced no evidence, though one individual protestant introduced some testimony. The receiver and the company introduced their evidence. The commission then took the matter under advisement. August 3rd the motions in the District Court came on again, pursuant to continuance for hearing and final determination, and the court then ruled that it had jurisdiction to enter the order of July 2nd, and overruled both motions, leaving the order of July 2nd in full force and effect. At midnight, Aug. 4th, service was abandoned, and Aug. 5th the receiver proceeded to enforce the court order, and to dismantle the road until stopped by a restraining order from this court. August 12th motion for a new trial was denied.

The assignments of error are that the court erred in holding that it had jurisdiction to enter the order of July 2nd; that it erred in holding that the commission did not have exclusive jurisdiction over the cessation of service upon, abandonment of the line, and "junking" of the road; that it erred in denying the motion of the commission to vacate or modify the court order of July 2nd; that it erred in refusing to allow the Attorney General to intervene on behalf of the state; that it erred in refusing to direct the receiver to apply to the commission for leave to cease operations; that it erred in allowing the court order to become effective Aug. 5, 1918; that it erred in entering the order directing the cessation of service upon and the sale and "junking" of the road without application having first been made to the commission by the receiver and permission granted therefor; that it erred in denying a motion for a new trial, and that it erred in entering the final order Aug. 3, 1918, denying the motion of the commission and the motion of the Attorney General.

Garrigues, J., after stating the case as above:

1.  Though the legislature has the power, it would be impracticable for it to directly determine the abandonment of service upon and dismantling of a railroad. Therefore, it may delegate such power to a commission. One of the questions in the case is—was such power delegated?

The legislature may prescribe the method for the administration of public service corporations. The state has inherent power to regulate and control public utilities within the state, and, to this end, it is well settled the legislature may create a commission to which it may delegate governmental authority and supervision, and that the right to do so exists without any constitutional provision; that is, the power of the legislature to regulate the service of public utilities may be exercised through a commission, although the constitution is silent on the subject. The powers of the commission in such cases are administrative. Its duties are to administer the law and carry into effect the will of the legislature.

2. The only complaint of plaintiff in error is that the receiver failed to make application to, and obtain from, the commission its assent and sanction to abandon service and dismantle the road, and such failure is the only question involved that will be considered. That is, whether the District Court or the commission was vested with exclusive jurisdiction over the abandonment of service and the dismantling of the Midland railroad lying wholly within the state. If the commission possesses the exclusive jurisdiction, then the court order of July 2nd is void, and all other questions in the case are immaterial. There is no question about the jurisdiction of the District Court to entertain the foreclosure suit, appoint a receiver and order the sale of the property on foreclosure. The point is—did it have the right to go further and hear and determine the matter of ceasing to operate and "junking" the road? If the commission had gone ahead, regardless of the court's order, it would either have had to concur therein, or direct the receiver to do something different, and in the latter event there would have been a conflict of jurisdiction, and an apparent contempt of court. To avoid this happening, if the jurisdiction of the commission was usurped by the court, the commission, under the circumstances, had a right to appear in court and ask the court to vacate or modify the order to avoid a conflict of jurisdiction, and in case the court refused, to have the ruling reviewed.

3. Whether the commission has jurisdiction over the ceasing of service upon and the dismantling of a railroad, is a judicial question for the court, but the exercise of that jurisdiction, by the Commission, is the exercise of administrative power, delegated to the commission by the legislature. Under the act power is conferred upon the commission to regulate the service, which includes power over the operation of the railroad and the maintenance of the tracks. Power to regulate service necessarily includes power over the thing to be regulated. This act confers upon the commission sufficient authority, when the public

interest requires that no change should be made, to prevent a railroad company from ceasing service upon and dismantling the road without the consent of the commission.

*Railroad Commission v. K. C. S. Ry. Co.,* 111 La. 133-139, 35 So. 487; *State, ex rel. v. Brooks-Scanlon Co.,* 143 La. 539, 78 So. 847.

We therefore conclude that the Public Utilities Act confers exclusive jurisdiction upon the commission to determine whether a railroad company may abandon service upon and dismantle a railroad, lying wholly within the state.

4. Was the receiver appointed by the court subject to the same control as the railroad before the appointment of the receiver? Yes. The act, as amended in 1915, gives the Commission jurisdiction over receivers appointed by any court whatsoever. By section 2, receivers of railroads appointed by the court are declared to be common carriers, and subject to the act. The act provides that the commission shall enforce all statutes of the state affecting public utilities unless the enforcement is placed specifically in some other tribunal. Nowhere is power vested specifically in the District Court by any statute to enter such an order. In *State ex rel. v. Flannelly,* 96 Kans. 372, 381, 152 Pac. 22, 26, it is said:

"The next question is, Are the receivers subject to the control of the public utilities commission, under the public utilities act? The Kansas Natural Gas Company, whose property is now in the possession of the receivers, and whose business is now being conducted by them, was engaged in the business of a public utility. When the receivers continue to do the same business and render the same service as that performed by the Kansas Natural Gas Company they are a public utility, as defined in the public utilities act, and are subject to the provisions of the act. The appointment of receivers to carry on the business of a public utility does not withdraw that public utility or its receivers from the control of the laws of the State. The

public utilities commission can make the same orders, rules and regulations governing these receivers and the property in their control that they could have made concerning the Kansas Natural Gas Company and its property before the receivers were appointed. The receivers have the same right to appeal to the courts, that the Kansas Natural Gas Company had—no greater, no less."

5. We are satisfied the statute, if free from constitutional objections, delegates to the commission exclusive jurisdiction over the operation, cessation of operation upon, and the dismantling of railroads within the state.

The constitutional objection raised to the statute is that it confers judicial power upon a commission. It is also claimed that the motion of the receiver for a "junking" order, called into play the District Court's inherent equity power to determine a judicial question, and being a constitutional court, the statute, in so far as it attempts to confer exclusive jurisdiction upon the commission and take it away from the District Court, if it does, is unconstitutional, and the court having previously acquired jurisdiction and decided the matter, its determination is conclusive upon the commission.

The Public Utilities Commission is not a court; but is an administrative commission, having certain delegated powers, and charged with the performance of certain executive and administrative duties, and its powers are subject to the action of the courts in matters of which the courts have jurisdiction. The legislature did not give the commission power to render judicial decisions or jurisdiction over remedial rights as exercised by the courts. Judicial powers relate to the authority exercised by courts through the instrumentality of judicial remedies. The legislature did not confer upon the commission such judicial powers as courts are required to exercise in suits between litigants. The power to ascertain from the facts whether a railroad company should discontinue service upon and dismantle the road is delegated by the legislature to a commission. The

commission acts upon the existence of facts which it must determine, but this is not the exercise of judicial power in a constitutional sense. In administering the law in such a case the commission must necessarily determine many things and facts; this involves investigation, and the exercise of judgment and discretion, incidental to the administration of the law. Because it is of a judicial nature or the exercise of quasi judicial functions does not contravene the Constitution. The determination of certain facts or things in the operation of the law is merely incidental to the administrative powers of the commission. The legislature could delegate power to determine the facts and things upon the decision of which the operation of the law is made to depend. This is not the exercise of judicial power by a commission in the sense that courts administer judicial remedies, but is incidental to the exercise of delegated administrative powers. The exercise of judgment and discretion as an incident to such power is not the exercise of judicial power within the meaning of the Constitution. The authority delegated to the Commission relates to the administration of the law and not to the exercise of judicial remedies. The preliminary determination of facts required to be solved by investigation and the exercise of judgment and discretion are but incidental to the commission's administrative duties. *Consumers' League v. C. & S. Ry. Co.*, 53 Colo. 54, 74, 125 Pac. 577, Ann. Cas. 1914A, 1158; *C. & S. Ry. Co. v. Railroad Commission*, 54 Colo. 64, 129 Pac. 506; *D. & S. P. Ry. Co. v. City of Englewood*, 62 Colo. 229, 161 Pac. 151; *Locke's Appeal*, 72 Pa. 491, 13 Am. Rep. 716; *State ex rel. v. Mo. Pac. Ry. Co.*, 76 Kan. 467, 92 Pac. 606; *State ex rel. v. Kan. P. T. C. Co.*, 96 Kan. 298, 305-306, 150 Pac. 544; *State ex rel. v. Andrae et al.*, 216 Mo. 617, 629, 116 S. W. 561; *State ex rel. v. Chittenden*, 127 Wis. 468, 502, 107 N. W. 500; *State ex rel. v. Public Service Com.*, 94 Wash. 274, 279, 162 Pac. 523.

The following cases are also in line as sustaining the exclusive jurisdiction and powers of the Commission: *Bor-*

*ough of New Brighton v. New Brighton Water Co.,* 247 Pa. 232, 93 Atl. 329; *St. Clair Borough v. Tamaqua Co.,* 259 Pa. 462, 103 Atl. 289; *Pittsburg Rys. Co. v. City of Pittsburg,* — Pa. —, 103 Atl. 959.

Reversed with directions to the District Court to vacate that portion of the order of July 2nd directing the receiver to cease operations upon and to dismantle the road.

Reversed, with directions.

Decision *en banc.*

Mr. Justice Bailey and Mr. Justice Teller agree in conclusion of reversal only.

Mr. Justice Teller concurring specially:

I concur in the judgment of reversal upon the sole ground that the court erred in denying the application of the Attorney General to intervene on behalf of the people.

I can not agree that the Public Utilities Commission has exclusive jurisdiction of the question of dismantling the road, under the circumstances presented by this record. The Constitution gives to the District Court "original jurisdiction of all causes at law and in equity," and that includes the foreclosure of mortgages and all matters incident thereto. As an incident to their powers, courts of equity, in foreclosure proceedings, determine how property subject to a lien in process of foreclosure shall be sold, in what parcels and upon what terms, with a view to giving full relief to the mortgagee, with as little sacrifice as may be to the owner of the encumbered property, or others interested therein.

In this case it was incumbent upon the court to make all orders necessary to give the plaintiff the benefit of its security in such a way as to cause the least loss to the parties interested in the property either as owners, or otherwise; this in pursuance of the chancery rule of doing complete equity to all parties before the court.

The continued operation of the road being a matter of public interest, the State is entitled to be heard upon the question of dismantling the road. This fact appears to

have been recognized in recent cases, which are authority also on the question of jurisdiction.

In *State of Iowa v. Old Colony Trust Co.*, 131 C. C. A. 581, the state was a party in a suit in which the jurisdiction of a court of equity, in a foreclosure suit to direct the dismantling of a railroad, was directly involved. The Circuit Court of Appeals held that the lower court had such jurisdiction. The opinion, after stating the condition of the road as disclosed by the record, says:

"In these circumstances, what could the court, charged with the duty of caring for and protecting the whole property, have done except to order the abandonment of the steam line and the sale of its salvage?"

In *N. Y. Trust Co. v. P. & E. St. Ry. Co.*, 192 Fed. 728, the court said:

"The conclusion reached is that a court of equity, having possession of the *res*, with the parties before it, including the Attorney General, the proper representative of the state, has the power, in an insolvent situation like this, to dispose of the property in a way which may be for the best interest of the mortgagee; and if necessary in order to realize anything from the property, to order a sale in the alternative."

The order was that the road be offered as a going concern, and, if not sold at a price equal to its salvage value, that it be sold for dismantling.

The District Court, having jurisdiction of the question, could not be deprived of it by legislative enactment; and, having taken jurisdiction of the cause, should, after allowing the people to be represented, proceed to try the question of dismantling the road.

I am authorized to state that Mr. Justice Bailey concurs in this opinion.